IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONNA C.,[1]

       Plaintiff,                                      Civ. No. 1:23-cv-01513-MC

      v.                                              **OPINION AND ORDER**

**COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,**

       **Defendant.**

_____

**MCSHANE, Judge**:

Plaintiff Donna C. bring this action for judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Plaintiff alleges that the Administrative Law Judge ("ALJ") erred by (1) improperly rejecting Plaintiff's subjective symptom testimony, and (2) improperly rejecting the lay witness testimony of Plaintiff's husband, Randy C. For the reasons explained below, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.

1 – OPINION AND ORDER

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff applied for benefits on February 16, 2021, alleging disability as of July 7, 2020. Tr. 228-31. Following an October 2022 hearing, ALJ Weatherly determined Plaintiff was not disabled in a November 2022 decision. Tr. 16-26. Plaintiff sought review of the hearing decision from the Appeals Council, which they denied in August 2023. Tr. 222-24, 1-6. The ALJ's decision then became final, and now Plaintiff seeks judicial review of the ALJ's decision.

Plaintiff is currently 64 years old. *See* Tr. 66. Plaintiff has earned her Associate's Degree and had previous work experience as a collection clerk, a composite job made up of an end user consultant and an information technology specialist, and as a director of information technology. Tr. 53-54. Plaintiff alleges disability due to back pain and the inability to concentrate and focus due to medication side effects. Tr. 248-55.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989) (citing *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986)). "'If the evidence can reasonably support either affirming or reversing,' the reviewing

court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies his burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*. If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The ALJ determined that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease with radiculopathy; osteoarthritis; obesity; cervical spine stenosis; and hypertension. Tr. 18. The ALJ further determined that Plaintiff had the RFC to perform light work with limitations: she can occasionally climb ramps and stairs; never climb ladders or scaffolds; never crawl; frequently balance; and occasionally stoop, kneel, and crouch. She would be able to stand and/or walk for four hours in an eight-hour workday. She would have to avoid concentrated exposure to workplace hazards and significant vibration. Tr. 21. Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff is capable of performing her past work as a collection clerk, a composite job made up of an end user

3 – OPINION AND ORDER

consultant and an information technology specialist, and as a director of information technology. Tr. 26. Therefore, the ALJ concluded that Plaintiff was not disabled. *Id.*

In this appeal, Plaintiff first contends that the ALJ erred by improperly discounting her subjective symptom testimony, including claims that the ALJ impermissibly dismissed Plaintiff's testimony surrounding the cognitive impairment secondary to medication side effects and pain. Second, Plaintiff alleges that the ALJ erred in her analysis of the lay witness testimony from Randy C., including claims that the ALJ identified no reason to discount his statements.

## I. Subjective Symptom Testimony

Plaintiff argues the ALJ failed to provide the required "specific, clear and convincing evidence" to justify rejecting Plaintiff's allegations of her cognitive side effects from taking gabapentin. Pl.'s Br. 7-9; ECF No. 11. The Court agrees. Here, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease with radiculopathy, osteoarthritis, obesity, cervical spine stenosis, and hypertension. Tr. 18. However, in evaluating Plaintiff's claims on these impairments, the ALJ found that while "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 22.

To determine whether a claimant's testimony about subjective pain or symptoms is credible, an ALJ performs a two-stage analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017); 20 C.F.R. § 416.929. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v.*

4 – OPINION AND ORDER

*Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Second, absent affirmative evidence that the claimant is malingering, the ALJ must provide specific, clear, and convincing reasons for discounting the claimant's testimony regarding the severity of the symptoms. *Trevizo*, 871 F.3d at 678; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). The Ninth Circuit demands more than a summary of the medical evidence and generic, high-level reasons why a claimant's allegations conflict with that evidence. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The Ninth Circuit "requires the ALJ to specifically identify the testimony she or he finds not to be credible and . . . explain what evidence undermines that testimony." *Id*. (citing *Treichler*, 775 F.3d at 1102). When objective medical evidence is inconsistent with a claimant's subjective testimony, an ALJ can "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). "An ALJ is not required to 'believe every allegation of disabling pain.'" *Ahearn v. Saul*, 988 F.3d 1111, 1116 (9th Cir. 2021) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). Moreover, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity

and effect of the symptoms" about which the claimant complains. *Smartt*, 53 F.4th at 497-98 ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.") (emphasis in original). The ALJ "may consider a range of factors in assessing credibility." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

Here, the ALJ accepted that Plaintiff suffers back pain and side effects from her pain medication. Tr. 24-25. Plaintiff testified that on July 7, 2020, she fractured two vertebrae in her back and began physical therapy in 2022. Tr. 42, 44. Plaintiff testified that she takes gabapentin, Tylenol, losartan, and meloxicam. Tr. 44. Plaintiff stated that gabapentin causes brain fog and loss of thought. *Id*. In her experience, "its caused a memory problem on top of a really bad stomachache" as well as blurred vision and weight gain. *Id*. Despite gabapentin making her "tired and sleepy[,]" the medication "does help with the pain." *Id*. However, she does not take gabapentin in anticipation of events like doctor's appointments or driving to the store, due to the cognitive side effects. *Id*. She also testified that she takes meloxicam or at least four Tylenol to deal with the pain, and that walking and standing are the two hardest things for her to do. Tr. 45-46.

Plaintiff testified that a typical day for her consists of reading, doing puzzles, and completing her household chores in "15-minute bursts." Tr. 46. Plaintiff also stated that if she does not take her pain medication, her pain affects the clarity of her thinking because "the pain overrides clear thinking." Tr. 50. Regarding her previous work experience, Plaintiff was asked if "either [her] pain or the side effects of the gabapentin [would] interfere with [he]r ability to" complete the mental tasks required of her at her previous jobs. Tr. 51. Plaintiff answered "absolutely" because she "had to have clarity of thought on how to implement [a new program]"

and be able to "present it for approval." *Id*. She claims she "couldn't have a foggy brain [or a] foggy thought process" in order to complete her work duties. Tr. 51-52.

The ALJ summarized Plaintiff's testimony as follows:

> [Plaintiff] testified that on July 7, 2020, she fractured two vertebrae in her back and she has had problems ever since. She testified that surgery has been recommended for her back and she had undergone cortisone injection in 2020. She testified that she started physical therapy in 2022 and she still uses a back brace sporadically. She testified that she is taking gabapentin, Tylenol, losartan, and meloxicam. She testified that she has not been able to get into the recommended pool exercise but she is using a reclining/recumbent bicycle.
>
> She testified that gabapentin causes brain fog, loss of thoughts, memory problems, blurred vision, and weight gain. She testified that she takes Tylenol and CBD gummies for pain reduction. The claimant testified that she does not take the gabapentin on a regular schedule so that she can drive and run errands. She testified that she smokes a half a pack of cigarettes a day and drinks two glasses of wine on occasion.

Tr. 25 (internal citations omitted).

Plaintiff first asserts that the ALJ failed to properly consider Plaintiff's side effects from her pain medication. Second, Plaintiff argues that the ALJ erred in her analysis of Plaintiff's activities of daily living ("ADLs"). As discussed below, both claims have merit.

### A. Medication Side Effects

The ALJ failed to provide specific, clear, and convincing evidence that controverted Plaintiff's allegations. Regarding Plaintiff's claim of how gabapentin affects her, the ALJ acknowledged that one of Plaintiff's providers directed her to continue gabapentin as able, as she is "limited by [the] side effect of sedation." Tr. 23, 530. The ALJ also cited a treatment note from Dr. Mehlhaff to highlight that "[Plaintiff] reported feeling disoriented and mentally impaired while taking gabapentin at a dose that works as well as the same reaction to ibuprofen." Tr. 24,

7 – OPINION AND ORDER

531. However, this is a mischaracterization of the record, as the treatment note reads "Gabapentin helps but she feels disoriented and mentally impaired while taking it at [a] dose that works. Ibuprofen does help a bit but has the same reaction to that, [as she] has sense of mental impairment." Tr. 531. As shown, both medications cause Plaintiff to have cognitive impairments, but the ALJ nevertheless concluded that because Plaintiff "is able to dose the gabapentin to every two nights with a break in between[,]" she is able to "control the side effects of the medication." Tr. 25. In turn, the ALJ effectively rejected Plaintiff's testimony regarding the side effects of her medication without substantial evidence, and did not include any limitations in the RFC.

If the ALJ does not accept a claimant's testimony about side-effects of medication, the ALJ is required to support the decision with specific findings. *Varney v. Sec'y of Health & Hum. Servs.*, 846 F.2d 581, 585-586 (9th Cir. 1988). This is because medication side-effects may significantly impact an individual's ability to function at work; therefore, the claimant's testimony about limiting effects of medication "should not be trivialized." *Id*. Social Security regulations require an ALJ to consider side effects of medication taken for pain or other symptoms when assessing allegations of disabling symptoms. 20 C.F.R. § 416.929(c)(3)(iv). The ALJ erred in failing to either give credit to Plaintiff's statements about side effects of her medication or to discount the statements and "make specific findings regarding such evidence." *Varney*, 846 F.2d at 586. Here, the ALJ did not make specific findings controverting Plaintiff's complaints about the cognitive impairments that ensue after taking gabapentin. The fact that Plaintiff adjusts her doses of gabapentin does not meaningfully undermine her claim that the medication affects her cognitive abilities, nor does it indicate that her side effects are controlled.

Plaintiff argues the evidence the ALJ cited fails to undermine her testimony. Pl.'s Br. 8; ECF No. 11. Plaintiff contends that it is "unclear how reducing the medication to address

sedation indicates that [Plaintiff] could maintain highly skilled full-time work despite the resulting increase in her pain." *Id*. The Court agrees. The ALJ concluded Plaintiff "is capable of performing past relevant work," but did not explain how the side effects from her medication, or her increased pain with reduced medication, would affect her work capacity. Tr. 26. The record fails to support the ALJ's conclusion. Plaintiff's providers document the sedative effects of her medication in their notes, and when Plaintiff was asked if her medication would impair her cognitive function as it related to her past work, she answered that it would. See Tr. 51-52, 463, 530-31. Her past work dealt with confidential information and required her to be clear minded in making decisions. Tr. 51. The ALJ failed to provide any evidence controverting these statements. Therefore, the ALJ's decision is unclear how, cognitively, Plaintiff could return to past work. Tr. 47.

In conclusion, the ALJ's error was not harmless. If the functional area of concentrating, persisting, or maintaining pace had been considered, the RFC may have been different. *See* Tr. 19 (The ALJ found that in the area of "concentrating, persisting or maintaining pace. . . [Plaintiff] has no limitation."); *See also John W. v. Acting Comm'r of Soc. Sec.*, No. 3:23-cv-05844-TLF, 2024 WL 3084492 (W.D. Wash. June 21, 2024) (holding that the ALJ harmfully erred by failing to assess whether, or to what extent, plaintiff's cognitive side effects from his prescription medication would be a work-related limitation).

### B. Plaintiff's Daily Activities

Plaintiff claims that the ALJ erred by finding that Plaintiff's daily activities undermine her claim of disability. The Court agrees. Discussion of ADLs may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn*

*v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment.").

Here, the ALJ found that Plaintiff's ADLs conflicted with her testimony and demonstrated that she could perform her past sedentary work activity. Tr. 25. The ALJ summarized Plaintiff's ADLs as follows:

> Throughout the record, [Plaintiff] reports disabling pain and weakness from chronic back pain affecting her lower extremities but she testified that she is able to complete housework in 15 minutes intervals and care for herself in the absence of her husband who is gone five to 10 days at time as a truck driver. She testified that she is able to drive daily and shop in grocery stores without assistance. [Plaintiff] testified that gabapentin causes extreme brain fog affecting her memory and ability to process her thoughts. However, the record shows that she is able to dose the gabapentin to every two nights with a break in between to control the side effects of the medication. She testified that despite her medication side effects she is able to attend to all of her activities of daily living independently, read regularly, do crossword puzzles, do jigsaw puzzles, and drive with no limitations, which is not consistent with disabling sedating side effects impacting her basic functioning and ability to concentrate. She testified that she is unable to do any type of work but she also testified that the reasons she left her past jobs were due to downsizing and moving out of state, not due to back pain. Considering the record as a whole, the evidence fails to support a finding of disability with respect to the [Plaintiff]'s ability to perform her past sedentary work activity.

Tr. 24-25 (internal citation omitted).

Plaintiff argues that the ALJs summary of her ADLs is a misrepresentation of her testimony. Pl.'s Br. 8; ECF No. 11. The Court agrees. Though the ALJ asserts that Plaintiff can "drive with no limitations" which is "not consistent with disabling sedating side effects[,]" Plaintiff testified she does not take gabapentin if she needs to go anywhere in her vehicle and drive herself. Tr. 37-38, 45. Plaintiff's other activities such as reading, doing puzzles, and

completing household chores in 15-minute intervals are done with breaks, or not done at all when her pain level is high. Tr. 253, 49. She testified that due to the brain fog from gabapentin, she struggles to follow instructions and concentrate on the books and puzzles she engages with. Tr. 47, 49, 49-52, 253. The ALJ did not explain how these minimal ADLs, as performed by Plaintiff, contradict her testimony or translate to her past highly skilled employment. Accordingly, Plaintiff's activities are not a specific, clear, and convincing reason supported by substantial evidence upon which to discount Plaintiff's subjective symptom testimony.

## II. <u>Lay Witness Testimony</u>

The ALJ erred in rejecting lay testimony from Plaintiff's husband, Randy C. Generally, "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ . . . must give full consideration to the testimony of friends and family members."). The ALJ's reasons for rejecting lay testimony must be germane and specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (citing *Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)). An ALJ's failure to articulate such a germane reason is nonetheless harmless if the "testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

Plaintiff's husband submitted a statement in 2021 attesting to Plaintiff's back pain and inability to concentrate or focus due to her medications. Tr. 283-90. Plaintiff's husband indicated that she "doesn't drive if she has just taken meds [and] plans around them" and that he "prefers

11 – OPINION AND ORDER

her not to walk alone [because] if [her] back shifts she collapses[.]" Tr. 286. He noted that prior to her back injury, she used to be very active, but now she "cannot be physical anymore, [the] pain has caused fear. [She is] always fearful of hurting [her] back." Tr. 288. The ALJ "considered the supportive statements and observations from [Plaintiff]'s husband, Randy C[.], concerning her impairments and associated decreased work capacity when determining the above residual functional capacity pursuant to SSR 16-3p." Tr. 19 (internal citation omitted). The ALJ did not expand on her reasoning, nor is it clear whether she accepted or rejected Plaintiff's husband's statements. Therefore, the ALJ failed to provide germane and specific reasons for rejecting Plaintiff's husband's statement.

### III.    Remand

In this case, the Court has determined that the ALJ's decision contains non-harmless errors and so must determine whether remand should be for further proceedings or for an award of benefits. The decision whether to remand for further proceedings or for the immediate payments of benefits lies within the discretion of the court. *Treichler*, 775 F.3d at 1101-02. A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. *Id*. at 1100-01 (quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015), as amended (Feb. 5, 2016) (summarizing the standard for determining the proper remedy). The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award

benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

In this case, the ALJ erred by (1) failing to either credit Plaintiff's symptom testimony or give legally sufficient reasons for rejecting it, and (2) failing to either credit the lay witness testimony from Randy C. or give reasons germane to disregard it. Given the record, and the complicated nature of Plaintiff's diagnoses and treatment, the Court concludes that the appropriate remedy is a remand for further proceedings. On remand, the ALJ should:

(1) Credit Plaintiff's testimony or give specific, clear, and convincing reasons supported by substantial evidence to discredit Plaintiff's symptom testimony; and

(2) Credit Randy C.'s lay witness testimony in his May 4, 2021, function report or give reasons germane to this witness for disregarding his testimony.

## CONCLUSION

For these reasons, the Commissioner's final decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 17th day of October, 2024.

/s/ Michael McShane
Michael J. McShane
United States District Judge

13 – OPINION AND ORDER